IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

FREDA J. McCLENDON and PATRICIA
HIGGS, Individually and as Class
Representatives on Behalf of All
Similarly Situated Persons                                              PLAINTIFFS

v.                                        Case No. 2:11-CV-02034

THE CHUBB CORPORATION, ET AL                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiffs' Motion to Remand and supporting brief (Docs. 24-25), Defendants' Response (Docs. 34, 37), Plaintiffs' Reply Brief (Doc. 48), and Defendants' Sur-reply (Doc. 51). Plaintiffs dispute the existence of diversity jurisdiction in this case contending that the amount in controversy does not meet the jurisdictional requirements. 28 U.S.C. § 1332. For the reasons stated herein, Plaintiffs' Motion to Remand to State Court is GRANTED.

### I. Procedural History

Plaintiff Freda J. McClendon[1] commenced this action in the Circuit Court of Sebastian County, Arkansas. Plaintiffs McClendon and Patricia Higgs filed their Third Amended Complaint (Doc. 6) as a class action on January 25, 2011. Defendants timely removed on February 14, 2011 based on Plaintiffs' Third Amended Complaint ("Complaint"). Plaintiffs allege that the defendants, various insurance companies identified in the pleadings as the "Met P & C Defendants"[2] ("Met

___

[1] In her original Complaint, McClendon was listed as "Freda G. McClendon."

[2] The Met P&C Defendants are Metlife Auto & Home, Metlife Auto & Home Group, Metropolitan Casualty Insurance Company, Metropolitan Direct P&C Insurance Company, Metropolitan General Insurance Company, Metropolitan Group Property & Casualty Company, Metropolitan Lloyds Insurance Company of Texas, and Metropolitan P&C Insurance Company.

P&C"), the "Chubb Defendants"[3] ("Chubb"), and the "Travelers Defendants,"[4] ("Travelers") (collectively "Defendants") utilized a software program called Colossus to undervalue uninsured and underinsured motorist claims under insurance policies which they issued to Plaintiffs. They allege that the software program was used to knowingly manipulate the value of the claims as a "cost containment" measure, and that Defendants then falsely represented to the claimants that they were receiving the full amount they were due under their insurance policies. Plaintiffs allege that they were damaged because they received offers of settlement for less than what Defendants were legally obligated to offer.

Met P & C removed the case to federal district court, with the consent of all Defendants, asserting jurisdiction under 28 U.S.C. § 1332, 28 U.S.C. § 1367, and 28 U.S.C. § 1441. (Doc. 1). Although Plaintiffs' Complaint is filed as a class action, Met P & C asserts federal jurisdiction under 28 U.S.C. § 1332(a)(1), which requires that the parties be citizens of different states, and that the amount in controversy exceed $75,000, exclusive of interest and costs. Since the Plaintiffs filed this case as a class action lawsuit, Defendants could also potentially have asserted federal jurisdiction

---

[3] The Chubb Defendants are The Chubb Corporation, Chubb Custom Insurance Company, Chubb Group of Insurance Companies, Chubb Indemnity Insurance Company, Chubb Insurance Company of New Jersey, Chubb Lloyds Insurance Company of Texas, Chubb National Insurance Company, Executive Risk Indemnity Inc., Executive Risk Specialty Insurance Company, Vigilant Insurance Company, Chubb Executive Risk Inc., and Executive Risk Capital Trust.

[4] The Travelers Defendants are St. Paul Fire and Casualty Insurance Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Medical Liability Insurance Company, St. Paul Mercury Insurance Company, St. Paul Protective Insurance Company, St. Paul Surplus Lines Insurance Company, TravCo Insurance Company, Fidelity and Guaranty Insurance Underwriters Inc., Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, Travelers Casualty Company of Connecticut, Travelers Casualty Insurance Company of America, Travelers Commercial Casualty Company, Travelers Commercial Insurance Company, The Travelers Companies Inc., Travelers Excess and Surplus Lines Company, The Travelers Home and Marine Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, The Travelers Lloyds Insurance Company, Travelers Lloyds of Texas Insurance Company, Travelers Personal Insurance Company, Travelers Personal Security Insurance Company, Travelers Property Casualty Company of America, Travelers Property Casualty Insurance Company, and Travelers Property Casualty Corporation.

under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332 (d). In evaluating jurisdiction for class action lawsuits filed under Fed. R. Civ. P. 23, CAFA requires that any member of the class of Plaintiffs be a citizen of a state different from any defendant, and that the aggregate amount in controversy exceed $5 Million, exclusive of interest and costs. Defendants, however, have chosen to remove based only on complete diversity under U.S.C. § 1332(a)(1) and, as such, the Court will only address any CAFA issues to the extent they have been raised and addressed in the parties' pleadings.

Met P & C alleges in its Notice of Removal (Doc. 1) that complete diversity exists between the parties and the amount in controversy for each of the named Plaintiffs exceeds the amount needed for diversity jurisdiction. More specifically, the Notice of Removal states that Plaintiff Freda McClendon's claims have a potential recovery of $333,250. The Chubb Defendants filed a separate Consent to Removal and Notice of Removal, joining in Met P&C's Notice. (Doc. 11). In addition to joining Met P&C's arguments, Chubb also argues that Plaintiff Patricia Higgs' claims have a potential recovery exceeding $75,000, based on the fact that Higgs suffered "substantial" injuries in an accident and her policy limit is $300,000.[5] Defendants further argue that Plaintiffs' attempt to limit their damages in their Complaint is not binding. Because Plaintiffs have not filed a binding stipulation, Defendants argue that they have met their burden of proof that the amount in controversy exceeds the jurisdictional amount.

Plaintiffs filed a Motion for Remand (Doc. 24) stating Defendants cannot establish that the amount in controversy exceeds $75,000 for either named Plaintiff. They argue that Defendants rely

---

[5] Travelers also adopts these arguments by joining in Defendants' Response to Plaintiffs' Motion to Remand (Doc. 34), which includes the same arguments. (Doc. 37)

on claims not raised by Plaintiffs and base their calculations on hypothetical values of Plaintiffs' claims, which are speculative and not sufficient to meet the burden of proof for the amount in controversy. Plaintiffs argue alternatively that, even if Defendants could meet their burden of proof, Plaintiffs can show to a legal certainty, based upon the stipulations in their complaint, that the damages for each Plaintiff and class member will not exceed the jurisdictional amount and that the total recovery for all class members will not exceed the jurisdictional amount under CAFA. Diversity of citizenship is not contested, nor have Defendants argued that removal would be appropriate under CAFA, so the only issue currently before the Court is whether the amount in controversy for any plaintiff exceeds $75,000.

## II. Analysis and Discussion

Generally, "federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by congress." *Aldinger v. Howard*, 427 U.S. 1, 15, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Federal courts must strictly construe the federal removal statute, and resolve any ambiguities about federal jurisdiction in favor of remand. *Transit Casualty Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997). A defendant in state court may remove the case to federal court if the defendant can demonstrate that the federal court has original jurisdiction over the case. 28 U.S.C. § 1441(a). In removal cases, the party asserting federal jurisdiction has the burden of proof and must show, by a preponderance of the evidence, that the amount in controversy requirement has been met. *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.,* 346 F.3d 830, 834 (8th Cir. 2003). If Defendants satisfy their burden, remand is nonetheless appropriate if Plaintiffs can establish to a legal certainty that their claim is for less than the requisite amount. *Bell v. The Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009).

-4-

**A. Defendants and Preponderance of the Evidence**

In putative class action cases, removal is proper if a Defendant can show, by a preponderance of the evidence, that one plaintiff meets the amount-in-controversy requirement, as the Court can exercise supplemental jurisdiction over the other plaintiffs' claims under 28 U.S.C. § 1367. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005). The plaintiff is the master of her complaint, even in class action cases. *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). Therefore, in determining the amount in controversy, the Court looks first to the complaint. **"**If [a plaintiff] does not desire to try his case in the federal court, he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).  Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* at 289. "[P]art of the removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)(emphasis added).

Plaintiffs state in their complaint and in the Prayer for Relief that the amount in controversy for the "total recovery" of the named Plaintiffs and each class member is less than $75,000, and that the "total aggregate reward" for all class members is less than $5 Million, inclusive of interests, costs, and non-statutory attorneys' fees. (Doc. 6, pp. 17, 46-48). In the Complaint, Plaintiffs "expressly stipulate they are not seeking punitive damages or any form of exemplary damages . . . on behalf of themselves or the Class Members."[6] *Id*. at p. 47. Plaintiffs go on to "stipulate that they

---

[6] Plaintiffs also "specifically disclaim any actual or potential entitlement to punitive damages." (Doc. 6 at p. 17).

exclude and forego any actual or potential entitlement to statutory attorney fees."[7] *Id*. at p. 48. Plaintiffs state that "[p]ursuant to Arkansas Rule of Civil Procedure 8(a), each Plaintiff and Class Member is limited to less than $75,000 recovery individually and less than $5,000,000 total aggregate award for all Class Members and Plaintiffs so stipulate for all purposes." *Id.*    Finally, Plaintiffs specifically plead all claims in the alternative and state that "Plaintiffs do not seek double recovery by setting forth multiple theories of recovery or multiple remedies." *Id*. at 47.

The Eighth Circuit stated in *Usery v. Anadarko Petroleum Corp.* that "if a plaintiff's complaint asks for less than the jurisdictional amount, only the sum demanded is in controversy, and so a federal court has no jurisdiction over the action." 806 F.3d 1017 (8th Cir. 2010)(internal quotations omitted). Defendants argue that *Usery* goes on to say, however, that a plaintiff who merely alleges damages of less than $75,000 has not alleged a "sum certain" so as to make the above-quoted statement inapplicable in this case. *Usery* does not stand for Defendants' proposition, however, because the plaintiff in *Usery* was asking the court to determine the ownership of a mineral interest, not an amount in controversy regarding a potential money judgment. The court in *Usery* said the district court should have remanded because there was no proof as to the *value* of the mineral interest. In this case, looking at the face of the complaint alone, the Plaintiffs' claim for damages of less than $75,000 for each Plaintiff and class member is sufficient as a "sum certain." The "amount in controversy" can be determined from the complaint alone.  The Court sees little difference in pleading damages of $74,999 as opposed to pleading damages amounting to less than $75,000. To hold otherwise would be to put form over function and would do nothing to advance judicial

---

[7] Plaintiffs also "specifically disclaim any actual or potential entitlement to statutory attorney fees." (Doc. 6 at p. 17).

economy. Therefore, the Court finds that Plaintiffs have pleaded a specific amount of damages of less than the requisite federal jurisdictional amount. In any case, Defendants' burden is the same whether "the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum." *Minn. Mut.* 346 F.3d at 834.

Defendants contend, despite Plaintiffs' averments to the contrary, that the amount in controversy for both McClendon and Higgs, individually, exceeds $75,000. McClendon alleges that there is $25,000 at issue with respect to her policy. Defendants argue, however, that McClendon's amount in controversy increases past $75,000 to $333,250 when punitive damages and attorneys' fees are added. Defendants arrive at this number by calculating potential punitive damages based on the use of a 9-times multiplier on a base compensatory award of $25,000, resulting in a punitive damages award of $225,000. Defendants then tack on one-third of the $250,000, roughly $83,250, for estimated attorneys' fees, to arrive at the grand total of $333,250. Plaintiffs, however, have expressly stated, in their Complaint, that they are not seeking punitive or exemplary damages on behalf of themselves or the class members. (Doc. 6 at p. 47). Also, Plaintiffs seek less than $75,000 "total recovery" for each Plaintiff or class member, including non-statutory attorneys' fees. *Id.* Plaintiffs have also specifically pleaded their claims in the alternative, such that any attempt by Defendants to aggregate potential recovery amounts based on the potential for multiple recoveries is unavailing. The Court will only consider, in determining the amount in controversy, claims actually put into controversy by Plaintiffs. Absent inclusion of punitive damages and attorneys' fees, or aggregation of claims, Defendants have failed to show, by a preponderance of the evidence that the amount in controversy on McClendon's claims is greater than $75,000.

As the master of her complaint, a plaintiff can choose what claims to bring or what claims

to leave out. "[A] removing defendant can't make the plaintiff's claim for him; as master of the case, the plaintiff may limit his claims (either substantive or financial) to keep the amount in controversy below the threshold." *Brill*, 427 F.3d at 449. Plaintiffs in this case have gone beyond simply leaving out claims and have expressly disclaimed, for example, any claims for punitive or exemplary damages. Defendants have not cited any case law which would persuade the Court that a plaintiff who expressly disclaims seeking punitive damages would nonetheless be forced to seek them in an Arkansas court. The cases cited by Defendant stand, at most, only for the proposition that the door to an award of punitive damages may be left open in some cases where a plaintiff has not expressly sought them. *See Allred v. Demuth*, 319 Ark. 62, 65-66 (1994); *Bowles v. Osmose Utils. Servs., Inc.*, 2004 WL 4910143 at *9 (W.D. Ark. 2004), *aff'd* 443 F.3d 671, 675 (8th Cir. 2006). Based on that precedent alone, the Court cannot and does not find that an Arkansas court would force a plaintiff to seek punitive damages in a case where the plaintiff has expressly disclaimed any desire or intention to do so. To hold otherwise would be illogical and would take any force out of the axiom that a plaintiff is the master of her complaint. Defendants also cite to Ark. R. Civ. P. 54(c), which provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Again, the omission of a claim must, logically, be considered differently than the express renouncement of a claim. Here, Plaintiffs acknowledge that they may be entitled to punitive damages, but nonetheless make the conscious choice not to bring that claim. This is a far cry from a plaintiff who inadvertently, or for whatever reason, simply omits a claim for punitive damages in the first place. Therefore the Court cannot and will not consider punitive damages as a part of the amount in controversy. Without including punitive damages, even if attorneys fees were to be considered

(which the Court also finds is inappropriate based on Plaintiffs' Complaint) at Defendants' suggested rate of one third, the total of $25,000 plus a generous $8,350 would still amount only to $33,350 - well short of the jurisdictional minimum.

As to Higgs, Defendants argue that the Court should consider Higgs' underlying bodily injury claim as well as her specifically pleaded Colossus-based claims because, under Arkansas law, a plaintiff cannot split a cause of action. The Court finds, however, that any underlying bodily injury claim that Higgs may have is not within the scope of the issues presented by the fraud and conspiracy claims brought by Plaintiffs in the present class action suit. Furthermore, it does not appear from Defendants' pleadings or from the record, that Higgs has any bodily injury claim currently pending. Instead Defendants argue that, because Higgs "cannot bring a separate, *later suit* for her unresolved bodily injury claim, the value of all her claims should be considered now for purposes of satisfying the jurisdictional amount required for removal." (Doc. 34 at p. 10).  The issue of whether or not Higgs should  be able to bring and maintain a second cause of action should be decided by the appropriate court at that time. It is Higgs' risk to take if she decides not to include a claim, here, that she may be barred from bringing later. The Court will not force Higgs to bring a claim that she has not chosen to litigate merely to raise the amount in controversy such that jurisdiction may be exercised. Absent calculations based on Higgs' bodily injury claim not at issue in this case, Defendants have not provided any evidence or argument as to the value of Higgs' Colossus-based claims.

Defendants argue in the alternative that the Court should measure the value of Higgs' claims based on the $300,000 face value of Higgs' policy. One of the two cases on which Defendants rely for this proposition was a life insurance case in which the face value of the policy would inevitably

be paid if the policy holder continued the policy. *Minn. Mut.*, 346 F.3d 830 (finding that if plaintiffs were to receive the equitable relief they requested, "they would be due the face value of the policies upon their death, an event bound to happen" (internation quotation omitted)). Plaintiffs' claims in this case involve uninsured and underinsured motorist coverage. "Unlike death, an automobile accident is not an 'event bound to happen,' and even when claims are made under such policies, the policy limits are not necessarily paid by the insurance company." *Toller v. Sagamore Ins. Co.*, 514 F. Supp. 2d 1111,1119 (E.D. Ark. 2007). Furthermore, in both cases cited by Defendants, the plaintiffs challenged the validity of the policy itself. In *Minnesota Mutual*, the plaintiffs brought claims based on fraud, claiming that they were misled by insurance agents when *purchasing* an insurance policy. In *Mass. Cas. Ins. Co. v. Harmon*, the plaintiff insurance company brought an action for *rescission* of the insurance contract based on fraudulent nondisclosure of material facts by the defendant *at the time the policy was issued*. 88 F.3d 415 (6th Cir. 1996). Here, Plaintiffs seek no equitable remedies, and although Plaintiffs also assert claims for fraud, their fraud claims do not attack the validity of the underlying policies themselves, but rather assert that Defendants acted fraudulently during the claims process in systematically underpaying Plaintiffs and class members. The Court therefore finds that the amount in controversy cannot properly be based on the face value of Higgs' policy. Defendants otherwise fail to show that the damages actually sought by Higgs could amount to more than $75,000.

CAFA does not change the proposition that the plaintiff is the master of her own claim. *Bell*, 557 F.3d at 956. While issues may arise, in some cases, at the class certification stage in cases where a class representative has chosen not to pursue certain available claims, this Court is not faced with a Motion for Class Certification nor could it rule on such issues without first ensuring that

-10-

jurisdiction could be properly exercised. Any arguments Defendants may have as to the named Plaintiffs' adequacy as class representatives may be addressed after remand. Furthermore, class members who do not agree with the way Plaintiffs have structured their claims are free to opt out of this action and bring their own suit structured in the manner they see fit. But Higgs and McClendon have "made [their] choice, and the plaintiffs in state court who choose not to opt out of the class must live with it." *Murphy v. Reebok International, LTD.,* 2011 WL 1559234 at *3 (E.D. Ark. 2011)(quoting *Morgan v. Gay*, 471 F.3d 469, 477-78 (3rd. Cir. 2006)).

Defendants seem to argue that the Court should disregard Plaintiffs' self-imposed limitations in their Complaint, and instead calculate the amount in controversy based on the possibility that Plaintiffs could amend their complaint after remand to bring claims not presently included or to otherwise increase their recovery sought. Post-removal action by a plaintiff to reduce the amount in controversy will not deprive a federal court of jurisdiction. *St. Paul Mercury*, 303 U.S. at 292, 293. Here, the Court is facing the converse situation: Defendants, in effect, are asking the Court to exercise jurisdiction based on the possibility that Plaintiffs could act, post-remand, to amend their claim under Ark. R. Civ. P. 15 to add a claim for punitive damages or otherwise increase the amount of damages sought. Speculation as to Plaintiffs' future actions cannot, however, vest this Court with jurisdiction where it otherwise has none at the time of removal. "The preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).[8] If a Court could base

---

[8] The Court notes that some Courts, such as the Fifth Circuit in *De Aguilar*, have indicated that possibility for amendment could potentially affect analysis at the *legal certainty* stage. 47 F.3d at 1412. The Court expresses its findings as to legal certainty in this case below. The Court finds, however, that, as to Defendants' preponderance of the evidence burden, possibility of future amendment cannot be considered in order to help Defendants meet their burden.

its jurisdiction solely upon the possibility of a future amendment by a plaintiff, any case filed in state court would be susceptible to removal no matter how the plaintiff may have chosen to bring her claims. Defendants have not shown by a greater weight of the evidence a controversy worth more than the jurisdictional minimum at the time of removal. The inquiry as to whether or not Defendants have met their burden ends there.

## B. Plaintiffs and Legal Certainty

Even had Defendants been able to satisfy their burden of proof, remand would still be appropriate in this case because Plaintiffs have shown to a legal certainty that their claim is for less than the requisite jurisdictional amount. Arkansas law permits Plaintiffs to plead their damages specifically, and Plaintiffs in this case have done so, as the Court has already outlined above. Rule 8(a) of the Arkansas Rules of Civil Procedure provides that

> [i]n claims for unliquidated damage, a demand containing no specified amount of money shall limit recovery to an amount less than required for federal court jurisdiction in diversity of citizenship cases, unless language of the demand indicates that the recovery sought is in excess of such amount.

Despite the clear language of this provision, the Supreme Court of Arkansas held in *Interstate Oil & Supply Co. v. Troutman Oil Co.*, that Rule 8(a) must be read in conjunction with Rule 15(b), "which provides that, when issues *not raised by the pleadings* are tried *by the express or implied consent of the parties*, they shall treated in all respects as if they had been raised in the pleadings." 334 Ark. 1, 5 (1998)(emphasis added). The Arkansas Supreme Court then concluded that plaintiffs whose complaints contained a demand for unspecified unliquidated damages could recover more than the federal jurisdictional amount. *Id.* at 5-6.

Since *Troutman*, however, the Arkansas legislature has amended the state's procedural law

in, what seems to the Court, to be an effort to mend the gap identified by the Arkansas Supreme

Court in *Troutman*. In March of this year, the Arkansas legislature amended the Arkansas Code,

adding A.C.A. § 16-63-221, which states as follows:

> (a) A plaintiff who files a complaint in circuit or district court praying for an award of damages may, but is not required to, state an amount in controversy for the purposes of establishing subject-matter jurisdiction and determining if the amount sought is within the jurisdictional limits of the court.

> (b) A declaration allowed by subsection (a) of this section is *binding on the plaintiff with respect to the amount in controversy* unless the plaintiff subsequently amends the complaint to pray for damages in an amount that exceeds the jurisdictional limits of the court, at which time the amendment is governed by the Arkansas Rules of Civil Procedure.

(emphasis added). The Arkansas legislature, then, recognized that, although complaints may be

subject to amendment under Rule 15, plaintiffs are nonetheless bound to the statements in their

complaints *unless* an amendment is made. This new law adds important context to the interplay

between Ark. R. Civ. P. 8(a) and 15. In this new context Plaintiffs' statements and "stipulations" in

the Complaint, while not reaching the level of a binding stipulation signed by the Plaintiffs and

notarized, are nonetheless binding. Plaintiffs averments, here, are certainly more binding than a

generic *ad damnum* clause, and certainly more binding as having been filed in Arkansas than had

they been filed in a different jurisdiction with different procedural strictures. The fact that a plaintiff

may later amend her complaint to raise the amount in controversy does not change the fact that

plaintiffs are bound to their originally stated amount *unless* they choose to amend.

Both Plaintiffs and Defendants attempt to use the Eighth Circuit's statements in *Bell v. The

Hershey Co.* to their advantage. 557 f.3d 953 (8th Cir. 2009). But the present matter can be

-13-

distinguished from *Bell* in a few important aspects, and it does not appear that the situation presented by this case has been squarely addressed by the Eighth Circuit. In *Bell*, the Eighth Circuit stated that "[i]n order to ensure that any attempt to remove would have been unsuccessful, [the plaintiff] could have included a binding stipulation stating that he would not seek damages greater than the jurisdictional minimum upon remand." *Id.* at 958. Plaintiffs argue that the stipulations in their Complaint are in line with the directive laid out in *Bell*. While the Court does not agree that the Complaint, in form, is in line with a binding stipulation as outlined in *Bell*, the Court does find that the Complaint can and does serve the same function. A binding stipulation generally requires a more formalized process than what the Plaintiffs have done in merely filing their Complaint in order for it to become effective. Plaintiffs' Complaint, however, serves the same function in that it is binding on Plaintiffs under Arkansas law.

Defendants argue, based on the Eighth Circuit's statement in *Bell*, that in order to limit the amount in controversy to prevent federal jurisdiction, Plaintiffs had to submit a binding stipulation or affidavit prior to removal. *Bell* involved an application and interpretation of Iowa law. Arkansas law, unlike Iowa law, permits parties to set forth a specific amount in controversy in their pleadings and then binds the plaintiff to that amount unless the plaintiff amends her complaint. Therefore, while a separate, binding stipulation may be required in Iowa in order for a plaintiff to safeguard state court jurisdiction, a specifically pleaded complaint may serve the same purpose in Arkansas. While a binding stipulation would also certainly be effective in Arkansas, it seems to the Court that requiring a separate stipulation, even where a plaintiff has bound herself to a specific amount in controversy under Arkansas law, would be unnecessary and inefficient in many cases.

Defendants also argue that the Eighth Circuit, in *Bell*, explicitly rejected the notion that

-14-

judicial estoppel would bind Plaintiffs to the amount sought in their complaint in such a way that they could not seek a higher amount upon remand. Defendants recognize that the *Bell* opinion relied upon an interpretation of Iowa law but argue that the judicial estoppel doctrines of Iowa and Arkansas are identical. The *Bell* Court characterized the doctrine of judicial estoppel in Iowa as preventing "a party who has *successfully* taken a position in one litigation from taking the opposite position in a *subsequent* litigation." 557 F.3d at 959 (quoting *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 574-75 (Iowa 2006))(emphasis supplied by the Eighth Circuit). While the doctrine of judicial estoppel may be similar under Arkansas law, it seems to provide at least somewhat more leeway than the Iowa doctrine as set forth by the Eighth Circuit. Under Arkansas law, for instance, judicial estoppel may apply when a party assumes a position clearly inconsistent with a position taken in the *same case*. *Dupwe v. Wallace*, 355 Ark. 521, 525 (2004). Furthermore, the Court emphasizes that in *Bell*, the Eighth Circuit merely stated that it found "no evidence that upon remand an Iowa court would prohibit recovery in excess of the amount alleged as a matter of law." *Id.* Again, the *Bell* Court was considering the doctrine of judicial estoppel as applied to allegations the *Bell* plaintiffs made, in violation of Iowa law, within their petition. That is not the situation here. Plaintiffs pleaded in compliance with Arkansas law, which binds a plaintiff to her pleadings. Here, the Court finds that there is enough evidence to conclude, as a matter of law, that Plaintiffs would be prohibited from recovering in excess of the amount alleged in Arkansas courts barring any subsequent, good-faith amendment of the complaint.

The four elements of judicial estoppel under Arkansas law, as stated in *Dupwe*, are:

> 1. A party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case;

-15-

2. A party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage;

3. A party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and,

4. The integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

140 S.W. 3d at 467. The Court agrees with the reasoning set forth in the case of *Harris v. Sagamore Ins. Co.,* 2008 U.S. Dist. LEXIS 90288 (E.D. Ark. 2008). In *Harris*, the plaintiff expressly disclaimed any aggregate damages for her proposed class in excess of $4,999,999. *Harris,* 2008 U.S. Dist. LEXIS 90288 at *4. Judge Leon Holmes found to a legal certainty, based on an analysis of the above-listed elements of judicial estoppel, "that the Arkansas courts will not permit the plaintiff to recover damages for the class as a whole in excess of" the damages plead in the complaint. *Id.* at *8.

Similarly to the plaintiffs in *Harris*, in the present case, any attempt by Plaintiffs to change their position in state court would be precluded because any bad-faith attempt to amend their Complaint to seek increased damages would be clearly inconsistent with the position taken before this Court; it would suggest an attempt to manipulate the judicial process to gain an unfair advantage; the Plaintiffs would have successfully maintained their position such that this Court relied on their pleadings; and the integrity of the judicial process would be impaired by any subsequent inconsistent position. Thus, as all four elements of judicial estoppel recognized under Arkansas law would be met, the Court is satisfied that Plaintiffs would be estopped from seeking increased damages in state court upon remand.

The fact that Plaintiffs may be able to amend their Complaint upon remand does not change the Court's judicial estoppel analysis. A plaintiff should generally be allowed to amend her

-16-

complaint after remand, in good faith, when subsequent developments (a minor head injury which unexpectedly later results in death, for instance) warrant amendment. Arkansas law, as discussed above, allows for this eventuality. However, where a plaintiff moves to amend her complaint post-remand solely to thwart federal and state procedural rules and the ruling of the district court, such an attempt would obviously be in bad faith and, under Arkansas law, could be either stricken under Rule 15 or prohibited under the doctrine of judicial estoppel. Under Ark. R. Civ. P. 15(a), a plaintiff may amend her pleadings at any time without leave of court. However, upon motion by an opposing party, a court may strike any amended pleading where the court determines that prejudice would result because of the filing of the amendment. Ark. R. Civ. P. 15(a). Under 18 U.S.C. § 1446(b), the removal window in this case remains open until January 25, 2012.[9] If, after remand, Plaintiffs were to wait until after January 2012 to amend their complaint, without any intervening change in circumstances warranting such an amendment, an Arkansas court would likely find, upon motion by defendants, that such an amendment should be stricken as prejudicial. However, even without Defendants being required to file a motion, the Court finds, to a legal certainty, that the Arkansas courts will not permit Plaintiffs to recover damages for any individual plaintiff in excess of $75,000 based on a straightforward application of the doctrine of judicial estoppel.

## III. Conclusion

The Court finds that Defendants have not shown, by a preponderance of the evidence, that either named Plaintiff has put more than the $75,000 required for the Court to exercise jurisdiction into

---

[9] The Court notes that, although Defendants are not relying on CAFA in removing this action, CAFA could still permit removal, regardless of any one year time limit imposed by 18 U.S.C. § 1446(b), if - notwithstanding all the procedural barriers - Plaintiffs were to amend their complaint such that the aggregate amount in controversy were to exceed $5,000,000.

controversy. Additionally and alternatively, the Court finds that Plaintiffs have shown to a legal certainty that they cannot recover more than $75,000 on their individual claims upon remand. For all of the above stated reasons, the Court finds that Plaintiffs' Motion to Remand should be GRANTED.

 **IT IS THEREFORE ORDERED** that the Plaintiffs' Motion to Remand (Doc. 24-25) is **GRANTED.**  This case shall be remanded forthwith to the Circuit Court of Sebastian County, Arkansas.

 **IT IS SO ORDERED** this 11th day of August, 2011.

/s/ P. K. Holmes, III
P.K. HOLMES, III
UNITED STATES DISTRICT JUDGE